## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**DAMASO JOHNSTON,**

      **Petitioner,**

      **v.**

**HAMILTON COUNTY JUSTICE CENTER, et al.,**

      **Respondents.**

**Case No. 1:18-cv-864**
**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Bowman**

## OPINION AND ORDER

This case presents a procedural morass. The cause is currently before the Court on three separate Reports and Recommendations ("R&R") from the Magistrate Judge (Docs. 55, 64, and 65). And two previous R&Rs in this case already received District Court review.

The matter arises from a physical altercation between Plaintiff Damaso Johnston, who was then a pretrial detainee housed at the Hamilton County Justice Center ("HCJC") awaiting trial on state charges, and another detainee. Johnston claims that Deputy Evers ("Evers"), the sole remaining defendant in this action, used excessive force against Johnston in ending the fight, and then did so again in its immediate aftermath. Johnston also claims that he wrongly received discipline for the incident, in the form of a twenty-day "lock in" period in his cell.

Johnston originally sued Evers and HCJC seeking $2 million and injunctive relief. After screening the complaint, the Magistrate Judge recommended dismissing

HCJC. Johnston then sought to add as parties the Sheriff, who employed Evers, and other Corrections Officers, who Johnston contends were involved in a cover up. The Magistrate Judge ultimately recommended dismissing these new defendants, as well. The District Court adopted those two R&Rs, leaving Johnston to pursue his excessive force claims against Evers.

At that point, Johnston sought to expand his requested relief to also seek time off the state sentence he had received while this case was pending. He first filed a "Motion To get time off my sentence," which the Magistrate denied without an R&R. He next filed a "Write [sic] of Habeas Corpus Motion 'To Get Time Off My Sentence'" (Doc. 44). The Magistrate Judge issued an R&R (Doc. 55) recommending dismissal of that motion, to which Johnston did not object. Instead, Johnston filed a "Writ of Habeas Corpus" (Doc. 63), which the Magistrate likewise recommended dismissing (Doc. 65). This time Johnston did object (Doc. 66). Those two R&Rs are now before the Court.

The Magistrate Judge issued the remaining R&R currently before the Court in response to Evers' Motion for Summary Judgment (Doc. 54), which the Magistrate Judge recommends granting (Doc. 64). In the motion, Evers argued that Johnston had failed to exhaust his administrative remedies, and that, separately, Evers was entitled to qualified immunity. The Magistrate Judge found there was a genuine dispute regarding the former, but agreed with Evers on the latter. As described below, Johnston sort of objected to this R&R, as well (Doc. 67).

For the reasons set forth more fully below, the Court **DENIES** Johnston's request for habeas relief, however styled, for the simple reason that he has not named a proper defendant, but the dismissal is **WITHOUT PREJUDICE**. As for the R&R directed at Evers' motion for summary judgment (Doc. 54), on the other hand, the Court finds that, while the R&R may be correct that, due to Johnston's failure to submit evidence, no genuine dispute existed at the time the Magistrate Judge filed the R&R, Johnston has since tendered an affidavit. As Johnston is incarcerated and proceeding pro se, the Court returns this matter to the Magistrate Judge pursuant to Fed. R. Civ. P. 72(b)(3) for the purposes of (1) considering whether to admit the late-filed affidavit; and (2) if the Magistrate Judge determines consideration is warranted, whether that affidavit changes the determination on summary judgment. The Magistrate Judge is further directed to allow Evers (1) the opportunity to respond to Johnston's late-filed affidavit; and (2) to supplement the record, if he can, on the administrative exhaustion issues identified in this R&R.

## BACKGROUND

### A. Deputy M. Evers Breaks Up A Fight Between Johnston And Another Inmate, And Johnston Faces Discipline.

On September 7, 2018, Plaintiff Damaso Johnston, a pretrial detainee at HCJC, awaited trial on state criminal charges. That morning, Johnston and nine other detainees were transported to the Hamilton County Courthouse. During this move to a secure holding facility in the courthouse, a violent fight erupted between Johnston and fellow detainee, Louis Carter. (Compl., Doc. 11, #75; Resps.' Am. Mot. for Summ. J., ("Mot. for Summ. J."), Doc. 54, #231).

3

Mark Evers, the County Deputy charged with orchestrating the transfer, says that he immediately yelled at Johnston and Carter to stop. (Mot. for Summ. J. at #231). But the two ignored him. As Johnston and Carter continued to "brutally attack each other," one of Johnston's punches meant for Carter went astray and hit Evers. (Mark Evers Aff., Doc. 51, #211; Mot. for Summ. J. at #231). At that point, Evers decided to use force to stop the fight. (Mark Evers Aff., Doc. 51, #211; Compl., Doc. 11, #75). Evers managed to "stun" Johnston, using "two knee strikes with no result, then two closed hand strikes [or what could be described as "punches"] to the left side of [Johnston's] face." (Sheriff's Office Use of Force Rep., Doc. 50-2, #202). This, Evers submits, is a commonly used stun technique, which gave another deputy (who Johnston claims was Deputy Greer) enough time to restrain Johnston with handcuffs. (Mark Evers Aff., Doc. 51, #211).

Evers says that, at that point, Johnston turned his sights on Evers, first launching verbal threats and then stepping towards him. (*Id.*). Evers says that he pushed Johnston back to "create space." (*Id.*). Deputy Greer then placed Johnston in a chair. (*Id.*). But that did not end the hostility. According to Evers, Johnston continued his barrage of verbal threats. (*Id.*). Johnston then attempted to leave the chair and "come at" Evers, who says he chose to walk away and "wait for the supervisors." (*Id.*).

In the summary judgment proceedings before the Magistrate Judge, Johnston did not submit a competing account. He made various allegations in his Complaint and assertions in his motions, of course, but those are not "evidence." And beyond

that, he submitted nothing. Since the R&R issued, though, Johnston has provided a sworn affidavit, and the story it relates varies in some respects from Evers' telling. According to Johnston, Evers never commanded him to stop fighting with Carter. (Johnston Aff., Doc. 67-1, #313). Instead, Johnston says that Evers' first reaction to the fight was to knee Johnston in his ribs and punch him five times in the face. (*Id.* at #312–13). While Johnston agrees that he was cuffed and placed in a chair, Johnston says that he then began to scold Evers for hitting him. (*Id.*). The two began cursing at each other and then, Johnston testifies, Evers became so angry that he "put both of his hands around [Johnston's] neck" and began to "choke" Johnston, who was still handcuffed in the chair. (*Id.* at #314). After that, Johnston says, Evers "storm[ed] down the hallway." (*Id.*).

When Johnston returned from the courthouse to his cell, he says that he looked in the mirror and noticed that his chin appeared to be swollen. (*Id.* at #315). The staff took Johnston to receive medical treatment. The medical provider said Johnston looked fine except for a scratch on his face that needed a band-aid. (*Id.*). Johnston, on the other hand, claims in his Complaint that his chin was fractured. (Doc. 1, at #78). Accordingly, Johnston alleges he repeatedly asked the prison staff to take him to "UC hospital" to examine his chin. Each time, staff refused his request. (*Id.*).

Meanwhile, Evers submitted a disciplinary ticket against Johnston, alleging that Johnston hit him. (Compl. Supp., Doc. 11-1, #85). Johnston argued that Evers was lying and disputed the ticket. The HCJC conducted a hearing on the ticket, found Johnston guilty, and sentenced Johnston to a 20-day-lock-in, (i.e., 20 days

confinement to his cell). (*Id.* at #86). Johnston appealed the hearing officer's finding and won, albeit apparently on procedural grounds. (*Id.*). Between the hearing and the appeal, Johnston served about 13 days of his lock-in penalty. (*Id.*). After that, Johnston submitted several grievances about Evers, but alleges that they have all gone unanswered. (*Id.* at #81).

**B.      Johnston Files A 42 U.S.C. § 1983 Action And The Court Dismisses All Johnston's Claims Except For His Excessive Force Claims Against Evers.**

In December 2018, Johnston brought a pro se action against Evers and the HCJC. (Compl., Doc. 11; Mot. to Proceed In Forma Pauperis, Doc.1-1). Johnston's complaint requested: (1) "charges of assault on Deputy Evers"; (2) two million dollars; and (3) that Hamilton County take him to "UC hospital to see if they can fix [his] fractured chin bone." (Compl., Doc 11, #80). Although not entirely clear, Johnston's claim appears to stem from his allegations that (1) Evers used excessive force; (2) Evers lied on Johnston's disciplinary ticket; (3) Evers "got loud with" Johnston; and (4) Hamilton County Justice Center ignored Johnston's grievances and wrongly imposed a 20-day lock-in, of which Johnston ultimately served 13 days.

A few months after Johnston initiated the action, the Court granted him leave to proceed in forma pauperis. (Doc. 10). The Magistrate Judge then screened the Complaint under 28 U.S.C. § 1915(e)(2)(B), ("the In Forma Pauperis statute"), and recommended that the Court dismiss all of Johnston's claims, except his excessive force claims against Evers. (R&R on Compl., Doc. 12, #91–92). Johnston filed a general objection to that R&R. (Doc. 13).

Shortly thereafter, Johnston moved to amend his complaint to add several other prison deputies who were around during the fight or who were involved in his care afterwards. (*See* Doc. 20). On April 24, 2019, the Magistrate Judge granted the motion to amend and added the additional defendants to the case. (R&R on Am. Compl., Doc. 21, #122). But Johnston's victory was pyrrhic at best. In that same R&R, the Magistrate Judge again invoked the Court's authority under the In Forma Pauperis statute to sua sponte review the amended complaint and dismiss frivolous claims. As a result of that review, she recommended dismissing all of the newly added defendants. (*Id.* at #125). In particular, the R&R found that Johnston's amended complaint did not state what these new defendants did wrong; in other words, Johnston made no argument besides alleging that these prison staffers were present during or after the fight at issue. In fact, he stated only that these defendants were "witnesses in case [sic]." (*See* Mot. to Am., Doc. 20, #119). The Magistrate Judge reasoned that these limited factual allegations failed to state a viable claim for relief. (R&R on Am. Compl., Doc. 21, #125–27).

Johnston objected to this R&R as well, explaining that he holds these other deputies responsible for his injuries because they "negligently" failed to protect him from Evers and because they failed to investigate Johnston's subsequent grievances. (Obj. to R&R on Am. Compl., Doc. 23, #133).

On August 30, 2019, the Court adopted the Magistrate Judge's two R&Rs in their entirety both with respect to Johnston's original complaint and his amended

complaint. (Doc. 30). As a result of this Order, the only claims remaining in Johnston's § 1983 action are his excessive force claims against Evers.

## C. Johnston Makes Three Filings Seeking To Get Time Off His Sentence, Two Of Which Are Pending Review In This Court.

After the Magistrate Judge issued her second R&R, but before the Court adopted those R&Rs, Johnston's state criminal charges apparently concluded with Johnston's conviction and sentencing. (No party addresses this issue in their motions.) Johnston continued to move forward with this action even though it is based on his pretrial detention. On that front, presumably disappointed with the Court's decision on his § 1983 complaint, Johnston began to focus instead on using the case as a vehicle to reduce his now-imposed state sentence.

To that end, about a month after the Court's August 2019 Order adopting the Magistrate Judge's R&Rs, Johnston filed a "Motion To get time off my sentence." (Doc. 39, #169). In that motion, Johnston argued that the Court should adjust his now-imposed state sentence downward based on the 13-days he spent in lock-in during pretrial detention as punishment for hitting Evers, a "crime that wasn't [his] fault." (*Id.*). In response, the Magistrate Judge explained that, if Johnston wants time off his sentence, then he must raise that issue through a writ of habeas corpus, not as a claim under 42 U.S.C. § 1983. (Op. on Mot. for Time Off Sentence, Doc. 43, #182). Accordingly, the Magistrate Judge denied Johnston's Motion without issuing an R&R. (*Id.*).

Johnston, presumably attempting to comply with the Magistrate's Order, filed a substantially identical motion, but with a new title—"Write [sic] of Habeas Corpus

8

Motion 'To Get Time Off My Sentence.'" (Habeas Motion, Doc. 44, #183). In this "Habeas Motion," Johnston again argued that the Court should direct the state prison officials to credit him for the thirteen days he spent in lock-in confinement, at a rate of five days off his state sentence for each day he spent in lock-in during pretrial detention (for a total of 65 days). (*Id.*). Evers filed a three-sentence response arguing that the Court lacked the authority to grant a habeas petition in the context of a civil rights lawsuit. (Doc. 45, #185). The Magistrate Judge agreed with Evers and advised Johnston that he should seek relief through a federal habeas action challenging his state sentence under 28 U.S.C. § 2254, not through motions filed in connection with his pending 42 U.S.C. § 1983 action. (R&R on Habeas Mot., Doc. 55, #244–45). Accordingly, the Magistrate Judge recommended that the Court deny Johnston's Habeas Motion. (*Id.* at #246).

Johnston heard the Magistrate Judge loud and clear: he should stop using motions to ask for time off his sentence. Therefore, instead of objecting in District Court to the Magistrate Judge's R&R recommending denial of his Habeas Motion, Johnston filed a new request for a reduced sentence under the updated title "Writ of Habeas Corpus." (Habeas Writ, Doc. 63, #277). That filing prompted a new R&R in which the Magistrate Judge observed that, aside from the updated title, this request "presents nothing new." (R&R on Habeas Writ, Doc. 65, #301). Thus, the Magistrate Judge recommended that the Court deny Johnston's new Habeas Writ for the same reasons that the Court should deny Johnston's previous Habeas Motion. (*Id.*).

Johnston filed a timely objection to this R&R. (Obj. to R&R on Habeas Writ, Doc. 66, #304–05). In that objection, Johnston simply reiterated his request for time off his sentence—the same relief he had sought in his Habeas Motion and his Habeas Writ before the Magistrate Judge. (*Id.*). The only substantive difference between his objection and his original Writ (or Habeas Motion for that matter), is that in his objection, Johnston reduced his request for time off his sentence from 65 days to thirteen days. (*Id.*).

The R&R on Johnston's Habeas Motion (to which Johnston did not object), and the R&R on Johnston's Habeas Writ (to which Johnston did object), are two of the three R&Rs now ripe for review.

### D. Evers Moves For Summary Judgment; The Magistrate Judge Recommends Granting That Summary Judgment Motion; Then Johnston Objects And Tries To Re-Open His § 1983 Action.

The third R&R arises from the fact that, in between the time when Johnston filed his "Habeas Motion" in this case, and the time when Johnston filed his "Habeas Writ," Evers filed a motion for summary judgment on Johnston's underlying 42 U.S.C. § 1983 excessive force claims. In that motion, Evers argues that the Court should grant summary judgment for two reasons. First, Evers says that the Court lacks subject matter jurisdiction to hear the claim because Johnston has not properly exhausted his administrative remedies. (Mot. for Summ. J. at #233–36). The Prison Litigation Reform Act ("PLRA"), which Evers contends applies here, requires inmates and pretrial detainees to first pursue all available administrative remedies prior to initiating suit. (*Id.* at #233–34 (citing 42 U.S.C. §1997e(a))). Evers explains that Ohio

10

has a three-step grievance procedure when an inmate wishes to complain about a corrections officer, and Johnston did not exhaust that administrative process. (*Id.* at #234–35 (citing Ohio Adm. Code § 5120-9-31(J)). Therefore, Evers argues, Johnston cannot proceed on his § 1983 claim.

Second, Evers claims that summary judgment is appropriate because he is entitled to qualified immunity. (*Id.* at #236–39). In his motion for summary judgment, Evers denies choking Johnston, and instead insists that he, in good faith, applied the level of force necessary to break up the violent fight between Johnston and Carter. (*Id.* at #236–37). Evers also submits four disciplinary reports, multiple investigatory reports from the Sherriff's Office, and a medical use of force investigation report that, he says, all confirm his use of force was objectively reasonable. Moreover, Evers points out that Johnston's injuries were minimal. In fact, Johnston sustained only a single injury—a slight scratch on his nose that required a band-aid. (*Id.* at #239). Evers contends that this factual record supports the application of qualified immunity.

Although Johnston opposed the motion, he provided no competing evidence. That is, he did not submit any affidavits, medical records, or evidence of any kind.

In the R&R, the Magistrate Judge started with exhaustion. On that front, although Johnston had submitted no evidence that he filed a grievance, failure to exhaust administrative remedies under the PLRA, the Magistrate Judge correctly noted, is an affirmative defense. (R&R on Summ. J., Doc. 64, #287). Accordingly, Evers has the burden to establish that Johnston failed to exhaust his administrative remedies. On that front, Evers had failed to point to any evidence on the issue of

11

whether "jail administrators deliberately ignored or discarded Plaintiff's grievances," as Johnston claimed. *(Id*. at #290). Absent such evidence, the R&R concluded, while it was a "relatively close" call, (*id*. at #291), Evers failed to meet his burden.

The Magistrate Judge found Evers' qualified immunity argument more persuasive. Johnston takes issue with two of Evers' actions: (1) Evers striking Johnston with his knee and punching him in the face to end the ongoing fight; and (2) Evers allegedly choking Johnston while Johnston was handcuffed and sitting in a chair. As to the first, Magistrate Judge found that Evers' "use of his knee and fists to break up the fight and protect himself and others was objectively both necessary and reasonable," and that it thus was not excessive, especially in light of Johnston's minimal injuries from that altercation. (*Id*. at #294–97).

That left Johnston's allegation that Evers choked him. The Magistrate Judge noted that Evers disputes that he ever reactively choked Johnston. (*Id*. at #297–98). Even if Evers did choke Johnston, the Magistrate Judge explained, the evidence shows that Johnston was still combative even while handcuffed. (*Id*. at #298). Moreover, Johnston does not allege that the choking prevented him from breathing, or that it resulted in any injury at all. Thus, the Magistrate Judge found that even if the "choking" did occur, it was not so severe as to offend the Eighth Amendment. (*Id*. at #298–99). Therefore, the Magistrate Judge recommended that the Court grant Evers summary judgment based on his qualified immunity argument. (*Id*. at #299).

Johnston filed, albeit untimely, what appears to be an objection to this R&R. The "appears to be" part of that sentence refers to the fact that Johnston's filing

directed to the R&R on summary judgment is entitled "Motion to Appeal to Re-Open Excessive Force Claim." (Mot. to Re-Open, Doc. 67, #307–09). In this objection (assuming that is what it is), Johnston addressed only Evers' administrative exhaustion argument, which is a surprising choice as Johnston had prevailed on that argument. But, while not mentioning the qualified immunity issue, Johnston also submitted an affidavit containing his version of the events relating to Evers, thus potentially undercutting the R&R's treatment of that issue, which had been predicated on the lack of record evidence on that topic.

## LEGAL STANDARD

If a party objects to a report and recommendation within the allotted time, the district court must review de novo any portion of the magistrate judge's report "that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Here, the petitioner is proceeding pro se. While a pro se litigant's pleadings are to be construed liberally and have been held to less stringent standards than formal pleadings filed by attorneys, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), pro se litigants must still comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## LAW AND ANALYSIS

Generally speaking, Johnston's claims for relief sound in two categories—habeas and § 1983. Habeas is a procedural vehicle by which prisoners can seek "to obtain release from [unlawful] confinement." *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 486 (1973)). Section 1983, on the

other hand, provides a remedy to a plaintiff whose federal rights have been violated by a person "acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48–49 (1988). Here, as further described below, Johnston's request for habeas relief fails right out of the gate because it is directed at the wrong person. As for his § 1983 claim, although he failed to substantiate it before the Magistrate Judge, the Court concludes that, given his late-submitted evidence, the proper course is to re-commit this matter to the Magistrate Judge for her consideration of that evidence in the first instance.

**A.    Johnston Is Not Entitled To Habeas Relief In This Action, No Matter How His Request Is Labeled.**

As the Supreme Court has noted, "[t]he federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242, and citing 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained")). And that is the *only* proper respondent. *Id*. ("The consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition."); *see also Roman v. Ashcroft*, 340 F.3d 314, 319–22 (6th Cir. 2003) (rejecting efforts to broaden the notion of a custodian to include an "array of colorable custodians"). Moreover, the Court also noted that the person "who has custody" is the "person with the ability to produce the prisoner's body to the habeas court." *Rumsfeld*, 542 U.S. at 434. Thus, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held." *Id*.

14

That well-settled and straightforward principle dooms Johnston's request for habeas relief here, whether that request is labeled a "Motion To get time off my sentence," a "Write of Habeas Corpus Motion," or a "Writ of Habeas Corpus." The sole remaining defendant in this action is Evers, who does not have custody over Johnston. Indeed, not only is Evers not the head of the HCJC, but also Johnston is not even currently incarcerated in that facility. He is in the Pickaway Correctional Institution. Thus, the "proper respondent" for a habeas claim would be "the warden of the facility where [he] is being held." *Id.*

Because this case is the wrong vehicle for Johnston to seek habeas relief, the Court **ADOPTS** the Magistrate Judge's recommendation to **DISMISS** Johnston's request for habeas relief, but does so **WITHOUT PREJUDICE**, as the Court is not reaching the merits of his claim. (That being said, the Court observes that, should Johnston elect to pursue a habeas claim against his current facility's Warden, seeking time off of his state sentence, Johnston would likely need to first exhaust his remedies in state court.)

## B. The Court Returns The Summary Judgment Issue To The Magistrate Judge In Light Of Johnston's Newly Filed Affidavit.

That leaves the R&R recommending that the Court grant Evers' Motion for Summary Judgment. As for that R&R, it is not entirely clear as to whether Johnston appropriately objected to it. His objection, if that is what the filing is, was untimely, and the only specific objection he noted was to a portion of the decision in which he prevailed. That said, the Magistrate Judge pointed to Johnston's failure to provide evidence as the principal basis for granting summary judgment, and Johnston has

15

now (belatedly) addressed that shortcoming. Thus, in an abundance of caution, and in the interest of justice, the Court returns the matter to the Magistrate Judge for further consideration, limited to the appropriate disposition on Evers' Summary Judgment Motion.

### 1. The Court Will Consider Johnston's "Objection" To The R&R Although It Is Both Too Late And Too General To Require De Novo Review.

When reviewing a magistrate judge's report and recommendation regarding a plaintiff's 42 U.S.C. § 1983 claim, "[a] judge ... shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). If a petitioner fails to object, the district court need not "review a magistrate's factual or legal conclusions, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

The timing of the objection matters. As a general rule, "a party's failure to object to a magistrate judge's report within the time provided for filing objections operates as a waiver of that party's right to appeal." *Bosley v. 21 WFMJ Television, Inc.*, 245 F. App'x 445, 450 (6th Cir. 2007) (citing *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981)). That rule, though, is procedural, not jurisdictional, "and [so] the court may excuse compliance with it in the interests of justice." *Jones v. Warden, Ross Corr. Inst.*, No. 2:11-cv-0871, 2013 WL 6230365, at \*2 (S.D. Ohio Dec. 2, 2013) (citing *Thomas,* 474 U.S. at 155).

In addition, objections must be specific. "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v.*

*Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). This is because a general objection fails to focus the district court's attention "on any specific issues of review, thereby making the initial reference to the magistrate useless." *Id.* The Sixth Circuit has opined that it "would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error," and there is no reason why a party should be able "to do the same to the district court reviewing the magistrate's report." *Id.*

Johnston's objection on the summary judgment R&R falls short on both fronts. The R&R issued on October 16, 2020. (R&R on Summ. J., Doc. 64). And it notified Johnston that he had fourteen days, or until October 30, 2020, to object. (*Id.* at #300). Johnston did not do so. Rather, on November 12, 2020, Johnston filed two documents: one entitled "Responding (sic) to Report and Recommendation," (Doc. 66), and the other entitled "Motion To Appeal To Re-Open Excessive Force Claim," (Doc. 67).[1]

Johnston directed the first of the two objections, so far as the Court can tell, solely at the R&R on the habeas issue addressed above. Thus, that objection is not relevant to the summary judgment R&R.

---

[1] The Docket reflects that Johnston filed these two documents on November 16, 2020. But Johnston is currently incarcerated, and both of these documents are postmarked November 12, 2020. Accordingly, the Court will consider these potential "objections" to have been filed on November 12, 2020. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (determining a pro se prisoner's notice of appeal is filed at the time he "delivered it to the prison authorities for forwarding to the court clerk"); *Armour v. Gundy*, 107 F.3d 870 (Table), 1997 WL 91462, at *1 (6th Cir. 1997) (noting a pro se inmate is afforded both three extra days to file following service under Fed. Civ. R. 6(e) and his filings are deemed filed when they are delivered to prison authorities for mailing).

The second filing, however, Johnston's "Motion To Appeal To Re-Open Excessive Force Claim," (Doc 67), addresses at least some aspects of the R&R on summary judgment—although Johnston's attack (as explained immediately below) seems misguided. More specifically, recall that the summary judgment R&R analyzed both: (1) Evers' failure-to-exhaust argument (which the R&R denied); and (2) Evers' qualified immunity argument (on which Evers won). (R&R on Summ. J., Doc. 64, #292, 299). Johnston's "Motion To Appeal To Re-Open Excessive Force Claim" exclusively discusses the *first* of these issues. Specifically, Johnston outlines in more detail "three steps" that he took to try exhaust his remedies. While that is all well and good, it as an odd objection for Johnston to make, as he is objecting to the part of the R&R on which he prevailed. (R&R on Summ. J., Doc. 64, #291–92).

The only remaining "objection" he offers is a general request for the "United States District Court Southern District Of Ohio Western Division to Re-Open Excessive Force Claim." (Mot. to Re-Open, Doc. 67, #309). That doesn't cut it as an "objection." While surgical precision is not required, a petitioner must do more than merely ask the District Court to reverse a decision, without even bothering to identify where in the R&R the Magistrate Judge allegedly erred.

Given its lack of specificity, Johnston's objection has the same effect as failing to object at all and therefore does not warrant de novo review. Thus, the Court could simply adopt the Magistrate Judge's R&R outright. *See Thomas*, 474 U.S. at 150. Nonetheless, given that Johnston is proceeding pro se, the Court will review the R&R's grant of summary judgment based on Johnston's *very* general objection.

### 2. Legal Standard For Summary Judgment.

The R&R recommended that the Court grant Evers summary judgment. The Court's task at summary judgment is well settled. The Court must view the evidence in the light most favorable to the nonmoving party and only grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Morehouse v. Steak N Shake*, 938 F.3d 814, 818 (6th Cir. 2019); Fed. R. Civ. P. 56(a).

"The 'party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *See, e.g.*, *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (bracket omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). Accordingly, the non-moving party must do more than simply present *any* evidence in its favor. Rather, the non-moving party must produce enough evidence for a reasonable jury to hold that the party has met its burden of proof as to its entire claim. Put another way, "to defeat a motion for summary judgment, the 'evidence' must be 'such that a reasonable jury could return a verdict for the non-moving party.'" *Morehouse*, 938 F.3d at 818 (quoting *Anderson*, 477 U.S. at 248).

Here, as noted, the Magistrate Judge found that there was a genuine dispute as to administrative exhaustion, but not as to qualified immunity. Since either is sufficient to mandate judgment in Evers' favor, the R&R recommends granting Evers' motion. The Court starts with the latter.

### 3. Johnston Has Presented New Evidence Regarding Qualified Immunity That The Magistrate Judge Has Not Had An Opportunity To Consider.

"To prevail on a cause of action under § 1983, a plaintiff must prove (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Winkler v. Madison*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015)). Evers does not dispute that he acted under color of state law at the time of the incident. Rather, he maintains that his actions did not deprive Johnston of any constitutional rights, and he raises the defense of qualified immunity.

Qualified immunity protects government officials from liability under § 1983 "unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006)). A plaintiff must make two showings in order to defeat a claim of qualified immunity on summary judgment. First, the plaintiff must show that a constitutional violation occurred. *Brown*, 779 F.3d at 411 (citing *Sample v. Bailey,* 409 F.3d 689, 695 (6th Cir. 2005)). Next, the plaintiff must show that the violation "involved a clearly established constitutional right of which a reasonable

person would have known." *Id.* (quoting *Sample*, 409 F.3d at 696). The plaintiff must satisfy *both* prongs in order to overcome the defense of qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 226 (2009). The Court, though, is free to consider the two in either order. *Id.* at 236.

Johnston brings this §1983 action alleging Evers violated his right to be free from excessive force while in pretrial detention. An excessive force claim implicates different sections of the Constitution depending on the status of the petitioner at the time of the incident. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2014). If the excessive force occurred while the petitioner was a free citizen—e.g., when he is detained or arrested on the street—the Fourth Amendment is the proper vehicle to analyze an excessive force claim. *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015); *Graham v. Connor*, 490 U.S. 386, 386 (1989). In contrast, the Eighth Amendment governs excessive force claims that stem from post-conviction incidents. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). In the gray area between those two, such as with pretrial detainees, "the Fourteenth Amendment's more generally applicable Due Process Clause governs to bar a governmental official's excessive use of force." *Burgess*, 735 F.3d at 472. Thus, the Fourteenth Amendment's due process jurisprudence applies to Johnston's claim that Evers used excessive force against him while he was a pretrial detainee at HCJC.

Accordingly, to defeat Evers' qualified immunity claim, Johnston must show that (1) Evers violated Johnston's Fourteenth Amendment rights; and (2) those rights are clearly established such that a reasonable deputy should have known that

conduct was illegal. As to the first prong, the Fourteenth Amendment prohibits the use of excessive force "(or, for that matter, any use of force) when it is used to 'deprive' someone of 'life, liberty, or property, without due process of law.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 404 (2015) (Scalia, J., dissenting). To demonstrate a violation of this Fourteenth Amendment standard, a "pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97.[2] Objective unreasonableness is not a "mechanical standard," but rather "turns on the facts and circumstances of each particular case." *Id.* at 397 (citations omitted). In making this determination, courts should consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."

---

[2] The R&R incorrectly required Johnston to show both subjective and objective unreasonableness, which is the typical Eighth Amendment standard. (R&R on Summ. J., Doc. 64, #293). The R&R did that relying on *Ruiz-Bueno v. Scott*, 639 F. App'x 354, 358 (6th Cir. 2016), in which the Sixth Circuit explained that, because of incorporation, "Supreme Court precedents governing prisoners' Eighth Amendment rights also govern the Fourteenth Amendment rights of pretrial detainees." The § 1983 claims there, though, were based on the alleged failure to provide necessary medical care and on conditions of the confinement that allegedly fell below minimal standards of decency. *Id.* at 358, 362. As to those claims, the Fourteenth Amendment directly incorporates Eighth Amendment standards.

That is not true of excessive force claims. *See Coley v. Lucas County*, 799 F.3d 530, 537–38 (6th Cir. 2015). That is because the Fourteenth Amendment's Due Process Clause prohibits *all* "punishment," while the Eighth Amendment prohibits only punishment that is "cruel and unusual." *Kingsley*, 576 U.S. at 400. Accordingly, a plaintiff pressing a Fourteenth Amendment claim need only show that the officer used "objectively unreasonable" force; an Eighth Amendment claim, by contrast, requires a showing of *both* objective *and* subjective unreasonableness. *Id.* at 397 ("[T]he appropriate standard for a pretrial detainee's excessive force claim is solely an objective one."); *see also Hopper v. Phil Plummer*, 887 F.3d 744, 752 (6th Cir. 2018). Here, Johnston need only show objective unreasonableness, not, as the R&R suggests, both objective and subjective unreasonableness.

*Id.* At bottom, to survive a motion for summary judgment on an excessive force claim under the Fourteenth Amendment, the plaintiff must designate specific facts demonstrating that the defendant acted in an objectively unreasonable manner under the circumstances.

In addition to showing a violation of his constitutional rights, a plaintiff seeking to defeat qualified immunity must also demonstrate that the violated right was "clearly established" at the time of the incident. *See, e.g.*, *Baynes*, 799 F.3d at 610–11. Like with objective reasonableness, the question of whether a right is "clearly established" is an "inquiry that 'must be undertaken in light of the specific context of the case.'" *Hopper v. Montgomery Cnty. Sheriff*, 310 F. Supp. 3d 911, 929 (S.D. Ohio 2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)), *aff'd in part, dismissed in part sub nom. Hopper v. Phil Plummer*, 887 F.3d 744 (6th Cir. 2018). A right is clearly established when there is existing precedent that puts a reasonable officer on notice that their conduct violates the constitution. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A plaintiff does not need to present "a case directly on point," but must point to a piece of existing precedent that places the "constitutional question beyond debate." *Id.*

The problem for Johnston here—a problem that applies to both prongs of the analysis—is that he failed to submit any record evidence at all. Indeed, the Magistrate Judge specifically relied on his failure to submit such evidence as the basis for the decision on this issue.

Johnston, though, has since sought to rectify that shortcoming by submitting an affidavit to substantiate his account of the facts. (*See* Johnston Aff., Doc. 67-1). That presents a quandary. In essence, Johnston is seeking to challenge the R&R based on evidence that he never presented to the Magistrate Judge. To be sure, under Federal Rule of Civil Procedure 72(b), the Court has the power to "receive further evidence." But that is a matter of discretion, and not obligation. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019).

Here, the Court concludes that the more efficacious approach is to pursue another path open to this Court under that same Rule, namely "return[ing] the matter to the magistrate judge with instructions." *Id*. In particular, the Court instructs the Magistrate Judge: (1) to determine whether Johnston should be allowed to supplement the record with his newly tendered affidavit; and (2) if so, to determine whether, applying the Fourteenth Amendment excessive force standard described above, there is a genuine issue of material fact, based on this new evidence, as to Evers' qualified immunity defense.

### 4.   The Court Also Returns The Issue Of Administrative Exhaustion To The Magistrate Judge For Potential Consideration.

Separately, the R&R addressed the administrative exhaustion issue, finding a genuine dispute of material fact as to the viability of that defense. The PLRA prevents prisoners from bringing a 42 U.S.C. § 1983 claim in federal court unless they have first exhausted all available administrative remedies. 42 U.S.C. § 1997(e)(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA."). In order to exhaust administrative remedies, all prisoners,

inmates, and pretrial detainees must complete grievance policies and procedures of their prison facility. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). Thus, prisoners must adhere to the steps outlined in the intra-prison administrative grievance procedure, including any relevant time limitations. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citing *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006)). Although it is the prisoner's responsibility to exhaust his affirmative defenses, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Rather, it falls to the defendant to raise lack of exhaustion as an affirmative defense. *Id.* at 211. Therefore, "[w]hen the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Surles*, 678 F.3d at 455–56 (6th Cir. 2012)).

The intra-prison grievance procedure at the HCJC mirrors the grievance process set forth in Ohio Admin. Code § 5120–9–31(J)(1)–(J)(3). (Mot. for Summ. J. at #234–35). This grievance procedure involves three steps. First, the inmate must submit "an informal complaint to the direct supervisor of the staff member or to the department directly responsible over the subject matter with which the inmate is concerned." (*Id.* at #234). The next step requires the inmate to file "a notification of grievance with the Inspector of Institutional Services." (*Id.* at #235). Finally, "if the inmate is dissatisfied with the disposition of grievance, the inmate may file an appeal

with the Office of the Chief Inspector." (*Id.*). This three-step process is the exclusive grievance procedure at the Hamilton County Justice Center. (*Id.* at #234).

Evers contends that Johnston failed to even initiate the first step of the grievance procedure. As support, Evers submits a copy of the Hamilton County Justice Center's "Inmate Grievance Report" on Johnston. (Grievance Rep., Doc. 50-8, #208). The Grievance Report shows that, as of January 23, 2020, Johnston had filed only one grievance against HCJC—namely a complaint concerning the unfair distribution of uniforms. (*Id.*). Notably, the Grievance Report does not reflect Johnston's alleged grievance for Evers' use of force. Evers argues that, as such, Johnston has not exhausted his administrative remedies under the PLRA.

Johnston, however, argues that he in fact did file a grievance with Evers' supervisor, who is the appropriate recipient of the first grievance according the HCJC's grievance procedure. But, according to Johnston, HCJC has continuously ignored his grievances, and apparently failed to even list them in the log. He claims, for example, that on September 7, 2018, the day of the incident, he "grab[bed] a hand full of pink Grievance forms and wrote the 'incident' on what had occurred in full detail front and back of the Grievance form," but since then his "Grievance forms had been ignored." (Compl. Suppl., Doc. 11, #315, 317). Similarly, in his Motion to Re-Open, Johnston claims that after he filed his first Grievance he received "[n]o copies saying that my Grievance was being reviewed, nor was I called down to the Sergeant office to address my grievance form, which had been ignored." (Mot. to Re-Open, Doc. 67, #308).

26

That may create a factual dispute as to the first step of exhaustion, but that may not, in and of itself, save Johnston. Per Johnston's own account, the facility was ignoring his grievance. Under HCJC's grievance procedures, that would trigger an obligation for Johnston to take the second (and ultimately third) steps available to him, or at the very least explain why the remaining steps render the grievance process "so opaque that it becomes, practically speaking, incapable of use." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). On that front, though, as the Magistrate Judge observed, neither Johnston nor Evers offered any evidence regarding what, if anything, Johnston did as to the second and third steps of the process. And, as this is an issue on which Evers bears the ultimate burden of proof, the lack of such evidence, as the R&R also noted, is a problem for Evers. Indeed, that is the ground on which the R&R rejected summary judgment in his favor on this issue. (R&R on Summ. J., Doc. 64, #291–92).

As the Court is returning this matter to the Magistrate Judge for further consideration of the qualified immunity issue, though, the Court also instructs the Magistrate Judge to allow Evers to supplement the record on the administrative exhaustion issue (and to allow Johnston to respond to any new evidence Evers provides). It may be that Evers can address the evidentiary shortcoming that the R&R identified as to the second and third steps of the grievance procedure.

## CONCLUSION

For the reasons above, the Court **DISMISSES** Johnston's request for habeas relief **WITHOUT PREJUDICE**, thereby mooting the R&Rs directed at that issue (Docs. 55 and 65). As for Evers' Motion for Summary Judgment (Doc. 54), and the R&R directed at that motion (Doc. 64), the Court **RETURNS** the matter to the Magistrate Judge for further consideration of that issue consistent with this Opinion and Order.

      **SO ORDERED.**

February 11, 2021
**DATE**

      **DOUGLAS R. COLE**
      **UNITED STATES DISTRICT JUDGE**