UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAMASO L. JOHNSTON,

    Plaintiff,

v.

HAMILTON COUNTY JUSTICE
CENTER, et al.,

    Defendants.

Case No. 1:18-cv-864
JUDGE DOUGLAS R. COLE
Magistrate Judge Bowman

## OPINION AND ORDER

This cause comes before the Court on the Magistrate Judge's October 16, 2020, Report and Recommendation ("October 16, 2020, R&R," Doc. 64) and April 5, 2021, Supplemental Report and Recommendation ("Supplemental R&R," Doc. 80). For the reasons stated more fully below, the Court **ADOPTS** the October 16, 2020, R&R (Doc. 64) and the Supplemental R&R (Doc. 80) in full. The Court thus **DENIES WITHOUT PREJUDICE** Johnston's most recent request for habeas relief (Doc. 73) and **DENIES WITHOUT PREJUDICE** Johnston's Motion/Appeal (Doc. 72). The Court also **GRANTS** Defendant Mark Evers's Amended Motion for Summary Judgment (Doc. 54).

### BACKGROUND

The Court has previously summarized the relevant facts giving rise to this matter multiple times and thus need not do so again here. As previously set out:

> On September 7, 2018, Plaintiff Damaso Johnston, a pretrial detainee at HCJC, awaited trial on state criminal charges. That morning, Johnston and nine other detainees were transported to the

> Hamilton County Courthouse. During this move to a secure holding facility in the courthouse, a violent fight erupted between Johnston and fellow detainee, Louis Carter. (Compl., Doc. 11, #75; Resps.' Am. Mot. for Summ. J., ("Mot. for Summ. J."), Doc. 54, #231).
>
> Mark Evers, the County Deputy charged with orchestrating the transfer, says that he immediately yelled at Johnston and Carter to stop. (Mot. for Summ. J. at #231). But the two ignored him. As Johnston and Carter continued to "brutally attack each other," one of Johnston's punches meant for Carter went astray and hit Evers. (Mark Evers Aff., Doc. 51, #211; Mot. for Summ. J. at #231). At that point, Evers decided to use force to stop the fight. (Mark Evers Aff., Doc. 51, #211; Compl., Doc. 11, #75). Evers managed to "stun" Johnston, using "two knee strikes with no result, then two closed hand strikes [or what could be described as "punches"] to the left side of [Johnston's] face." (Sheriff's Office Use of Force Rep., Doc. 50-2, #202). This, Evers submits, is a commonly used stun technique, which gave another deputy (who Johnston claims was Deputy Greer) enough time to restrain Johnston with handcuffs. (Mark Evers Aff., Doc. 51, #211).
>
> Evers says that, at that point, Johnston turned his sights on Evers, first launching verbal threats and then stepping towards him. (*Id.*). Evers says that he pushed Johnston back to "create space." (*Id.*). Deputy Greer then placed Johnston in a chair. (*Id.*). But that did not end the hostility. According to Evers, Johnston continued his barrage of verbal threats. (*Id.*). Johnston then attempted to leave the chair and "come at" Evers, who says he chose to walk away and "wait for the supervisors." (*Id.*).

(February 11, 2021, Op. and Order ("February 11 Op."), Doc. 70, #324–25) (citations omitted).

In this action, Johnston seeks redress for the injuries he claims he suffered that day. But his efforts on that front have led to what the Court dubbed a "procedural morass." (*Id.* at #322). Because the Court has extensively described the procedural machinations in its previous Order (*see id.*), the Court will keep its description here brief.

2

To begin, Johnston sued the Hamilton County Justice Center ("HCJC") and Deputy Mark Evers in December 2018 loosely claiming violations of his civil rights under 42 U.S.C. § 1983. (*See generally* Doc. 11). Johnston sought $2 million in damages and injunctive relief. (*Id.* at #18). The Court referred the matter to a Magistrate Judge under local rules.

In an initial Report and Recommendation filed more than three years ago, the Magistrate Judge recommended the denial of Johnston's motion for injunctive relief and the sua sponte dismissal of the Complaint with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), except for Johnston's excessive-force claim against Evers, which the Magistrate Judge ordered served on Evers.[1] (Doc. 12, #96). Johnston objected (Docs. 13, 16) to the R&R, but while those objections were pending, he also moved to amend the Complaint, seeking to add five HCJC officers as defendants. (Doc. 20). The Magistrate Judge granted Johnston's motion and, in a second Report and Recommendation, continued to recommend dismissal with prejudice of the Amended Complaint. (Doc. 21, #127). Johnston again objected to the R&R.[2] (Doc. 23). On August 30, 2019, the Court adopted the R&Rs, thereby denying Johnston's

---

[1] At this time, Johnston had filed a "No Delay" motion asking for money to be withdrawn from his account to pay the filing fee. (Doc. 5). The Magistrate Judge denied the motion as moot given that Johnston had been granted leave to proceed in forma pauperis. (Doc. 12, #95). Johnston had also filed a "Motion for Evidence" (Doc. 6), which the Magistrate Judge denied because, at the time, Evers had yet to be served with process and no scheduling order had been entered. (Doc. 12, #95).

[2] Shortly after entering his Objection to the second R&R, Johnston moved again for leave to proceed in forma pauperis. (Doc. 24). Because he already had such status, the Magistrate Judge denied the motion as moot. (Doc. 26).

request for injunctive relief and dismissing the Amended Complaint with prejudice, except as to his excessive force claim against Evers, which remained. (Doc. 30, #150).

In October, Johnston filed a "Motion To get time off my sentence[.]" (Doc. 39). The Magistrate Judge denied that motion in February 2020, explaining that the proper vehicle to raise that issue is a writ of habeas corpus, not a motion in a § 1983 action (Doc. 43, #182). So in May 2020, Johnston filed (still in this action) a "Write [sic] of Habeas Corpus Motion 'To Get Time Off My Sentence'" (Doc. 44). The Magistrate Judge issued another R&R in July 2020 (Doc. 55) recommending dismissal of that claim, noting substantial similarity between Johnston's previous motion and his newly-styled "writ." Johnston did not object. Instead, he filed yet another "Writ of Habeas Corpus" (Doc. 63), again in this § 1983 action, which the Magistrate again recommended dismissing in a new R&R (Doc. 65) on November 2, 2020. This time, Johnston filed a timely objection, albeit one that did not object to anything in the R&R, but rather simply restated his original arguments for a sentence reduction. (Doc. 66, #304–05).

Meanwhile, on July 24, 2020, Evers moved for summary judgment on Johnston's excessive force claim. (Doc. 54). As the Court noted in its previous Opinion and Order, Johnston "sort of objected" to the motion, but in doing so failed to provide *any* competing evidence. (Doc. 70, #323, 332). Evers's summary judgment motion gave rise to the October 16, 2020, R&R, which concluded that Evers is entitled to summary judgment on qualified immunity grounds. (Doc. 64, #299). That R&R, like others, noted that any objections must be filed within fourteen days or risk being forfeited on

4

appeal. (*Id.* at #300). A month later, on November 16, Johnston filed a single document that included an untimely objection to the October 16, 2020, R&R and a timely objection to the November 2 R&R issued on Johnston's then-outstanding "Writ of Habeas Corpus[.]" (Doc. 66).

That same day, Johnston also filed another objection styled as a Motion "to appeal to Re-Open Excessive Force Claim" (Doc. 67) with an attached affidavit that, for the first time, offered evidence (in the form of Johnston's sworn testimony) contesting some of Evers's story (Doc. 67-1). In its previous Opinion, the Court described it this way:

> According to Johnston, Evers never commanded him to stop fighting with Carter. (Johnston Aff., Doc. 67-1, #313). Instead, Johnston says that Evers' first reaction to the fight was to knee Johnston in his ribs and punch him five times in the face. (*Id.* at #312–13). While Johnston agrees that he was cuffed and placed in a chair, Johnston says that he then began to scold Evers for hitting him. (*Id.*). The two began cursing at each other and then, Johnston testifies, Evers became so angry that he "put both of his hands around [Johnston's] neck" and began to "choke" Johnston, who was still handcuffed in the chair. (*Id.* at #314). After that, Johnston says, Evers "storm[ed] down the hallway." (*Id.*).
>
> When Johnston returned from the courthouse to his cell, he says that he looked in the mirror and noticed that his chin appeared to be swollen. (*Id.* at #315). The staff took Johnston to receive medical treatment. The medical provider said Johnston looked fine except for a scratch on his face that needed a band-aid. (*Id.*). Johnston, on the other hand, claims in his Complaint that his chin was fractured. (Doc. 1, at #78). Accordingly, Johnston alleges he repeatedly asked the prison staff to take him to "UC hospital" to examine his chin. Each time, staff refused his request. (*Id.*).
>
> Meanwhile, Evers submitted a disciplinary ticket against Johnston, alleging that Johnston hit him. (Compl. Supp., Doc. 11-1, #85). Johnston argued that Evers was lying and disputed the ticket. The HCJC conducted a hearing on the ticket, found Johnston guilty, and sentenced Johnston to a 20-day-lock-in, (i.e., 20 days confinement to his

5

> cell). (*Id.* at #86). Johnston appealed the hearing officer's finding and won, albeit apparently on procedural grounds. (*Id.*). Between the hearing and the appeal, Johnston served about 13 days of his lock-in penalty. (*Id.*). After that, Johnston submitted several grievances about Evers, but alleges that they have all gone unanswered. (*Id.* at #81).

(February 11 Op., Doc. 70, #326–27) (citations omitted).

The Court then issued the February 11 Opinion and Order. (*Id.*). That Order dismissed without prejudice Johnston's two outstanding requests directed at the duration of his sentence—his "Write [sic] of Habeas Corpus Motion 'To Get Time Off My Sentence'" (Doc. 44) and his "Writ of Habeas Corpus" (Doc. 63)—noting that Johnston had yet to name a proper defendant. (*Id.* at #324). As for Evers's outstanding Motion for Summary Judgment, the Court, in the interests of justice, recommitted the case to the Magistrate Judge with instructions to determine whether Johnston should be allowed to supplement the record with his late-filed affidavit and, if so, what potential effects that affidavit may have on the appropriate disposition of Evers's motion. (*Id.*)

Implementing the Court's instructions, on February 19, 2021, the Magistrate Judge ordered Evers to file a supplemental memorandum on the requested issues on or before March 4, 2021. (Doc. 71, #353). Evers did just that on March 4. (Doc. 77). In that same Order, the Magistrate Judge specifically directed Johnston to file *only* "a single Supplemental Reply Memorandum," and to do so on or before March 22, 2021. (Doc. 71, #354). Johnston took a different tack. On February 22, before Evers had even filed his supplemental brief, Johnston docketed an "appeal motion" asking the Court to "re-open up" his excessive force case. (Doc. 72). Then on March 1, he docketed another "Writ of Habeas Corpus," again as a filing in this § 1983 action, directed at

6

the HCJC Warden, Emma Collins, who is not a party to this case.[3] (Doc. 73). And that same day, Johnston also filed a preemptive "Memorandum to enter 'newly [sic] evidence[.]'" (Doc. 74). Three days later, he manually submitted three Exhibits on CD, presumably related to his earlier filings. (Doc. 75). Finally, on March 24 (two days after the Magistrate Judge's deadline), Johnston filed a response to Evers' supplemental memorandum. (Doc. 79).

The Magistrate Judge filed the Supplemental R&R on April 5, 2021, recommending Johnston's affidavit not be considered and Evers' Motion for Summary Judgment be granted, along with directions that any objections must be filed within fourteen days. (Doc. 80). Johnston once again filed his objections outside the specified window, this time on April 26. (Docs. 82).

## LAW AND ANALYSIS

**A.     Admissibility of Johnston's Late-Submitted Evidence**

The Court recommitted this matter to the Magistrate Judge for consideration of a narrow issue—namely, the impact of Johnston's sworn testimony, attached as part of his late-filed objections to the October 16, 2020, R&R, styled as a "Motion to Appeal to Re-Open Excessive Force Claim[.]" (Doc. 67-1). On that issue, Evers asks (and the Supplemental R&R recommends) that the Court strike Johnston's affidavit because of its untimeliness. *See Muhammad v. Close*, 798 F. Supp. 2d 869, 875 (E.D. Mich. 2011) (noting that district courts have discretion as to whether "to consider evidence first presented after a magistrate judge files a report, provided the evidence

---

[3] Recall that, at this time, the Court had dismissed Johnston's requests for habeas relief.

7

is furnished by the time objections to the report and recommendation are due"). After all, the Magistrate Judge ordered all objections to be filed within fourteen days, but Johnston waited a full month after the October 16, 2020, R&R had issued.

Such a request to exclude an affidavit places the Court under the umbrella of Federal Rule of Civil Procedure 72(b)(3), which directs:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3). While the Supplemental R&R is correct that the Sixth Circuit has yet to offer "definitive guidance on the potential constraints" of Rule 72(b)(3), those constraints must exist in some form. (Doc. 80, #421). Indeed, other circuits have intimated that consistently allowing new evidence to be considered "would effectively nullify the magistrate judge's consideration of the matter[.]" *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000); *see also Blackwell v. McCord*, No. 3:13-cv-739, 2016 WL 3444502, at *1 (M.D. Tenn. June 23, 2016) ("The presentation of new evidence to the district court that was not presented to the magistrate judge is disfavored."). The Court agrees. A rule allowing routine consideration of late-filed evidence would encourage a party to "save its knockout punch for the second round," *Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988), a result that frustrates judicial efficiency.

Compounding the problem here, Johnston has consistently shown a lack of respect for the Court's processes. Throughout this matter, he has submitted multiple

8

filings that were tardy, unintelligible, out of place, or a combination of all three. Consider just the most recent example. The Magistrate Judge's February 19, 2021, Order included the following text in bold font: "Notwithstanding the Court's lenience to date, Plaintiff is forewarned that strict compliance with this Order is expected. The undersigned ABSOLUTELY WILL NOT CONSIDER multiple memoranda or untimely filings." (Doc. 71, #354). That Order led to multiple filings, including a response brief (the only briefing the Order allowed) filed out of time.

Johnston's affidavit is no different. To start, it was untimely. But, even if the Court overlooks that fact, Johnston still seeks to introduce new evidence before the Court that he did not present to the Magistrate Judge. *See Blackwell*, 2016 WL 3444502, at *1; *see also Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). The facts alleged in the affidavit were available to Johnston when Evers initially moved for summary judgment, yet Johnston chose not to respond to Evers's motion with any actual evidence controverting Evers's account. Nor did Johnston present this evidence in any other filing prior to attaching them to the untimely filing in question.

It remains true that a pro se litigant's pleadings are to be construed liberally and are held to less stringent standards than those filed with assistance of counsel. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). But pro se litigants must still comply with the relevant procedural rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Allowing Johnston to ignore the Magistrate Judge's commands yet again would undermine the system's credibility. The Court will not let that happen. Whatever the

9

line may be, Johnston has crossed it here. As a result, the Court **ADOPTS** the Magistrate Judge's Supplemental R&R (Doc. 80), which recommends that Johnston's post-R&R affidavit and other untimely submissions should not be considered and declines to consider them in its analysis.

**B.     Johnston's Petition for Habeas Relief**

Johnston's docketed "writ of habeas corpus" demands that Warden Collins credit him for thirteen days off his state sentence. That request is rife with problems. First, as this Court previously explained, the only proper defendant in a habeas action challenging state confinement is the state official who has actual custody of the defendant. To be sure, Johnston now purports to name Warden Collins in his most recent habeas writ (Doc. 73), but she is not a party to this matter. And the time for amending the complaint and adding other defendants has long passed.

If Johnston believes he is entitled to relief in habeas, he should pursue that request in a separate action, not as a filing in this § 1983 action. In saying that, the Court acknowledges that there appears to be some confusion as to whether a defendant can combine those two forms of relief in a single action. *Compare Thompson v. Choinski*, 525 F.3d 205, 210 (2d Cir. 2008) ("[W]e know of [no basis] for the view that a petitioner may not seek relief under both a habeas statute and § 1983 in a single pleading."), *with Hall v. Edwards*, No. 4:13-cv-556-SNLJ, 2013 WL 1442459, at *1 (E.D. Mo. Apr. 9, 2013) ("At the outset, the Court notes that a prisoner may not bring claims in a single action pursuant to both habeas corpus and § 1983. These are separate causes of action, and a separate lawsuit must be filed for each

10

action."). *See also United States v. Morgan*, 346 U.S. 502, 506 n.4 (1954) (noting "habeas corpus … is sought in a separate case and record," and marks "the beginning of a separate civil Proceeding").

To the Court's knowledge, the Sixth Circuit has not ruled on this issue, although at least one district court in the circuit has observed that "[t]he disposition of both habeas claims and civil rights claims in a single action presents significant problems and courts must be on guard for attempts to use § 1983 'to make an end run around habeas corpus procedures.'" *Spencer v. Barret*, No. 14-10823, 2015 WL 4528052, at *4 (E.D. Mich. July 27, 2015) (quoting *Foster v. Kassulke*, 898 F.2d 1144, 1148 (6th Cir. 1990)). This Court agrees. Whether or not a petitioner *can* combine the two, the better path here is for Johnston to seek relief sounding in habeas in a separate action.

Accordingly, if Johnston wishes to pursue such relief, he should file a new action (outside this case), include an in forma pauperis application, identify solely Johnston's custodian as the respondent, and demonstrate that all required avenues of exhaustion have been met. For that reason, the Court **ADOPTS** the Magistrate Judge's Supplemental R&R (Doc. 80), and **DENIES** Johnston's request for habeas relief, again **WITHOUT PREJUDICE**.[4]

---

[4] Moreover, the Ohio Department of Rehabilitation and Correction website states Johnston was released from custody in June 2022. *See* https://appgateway.drc.ohio.gov/OffenderSearch (last visited September 20, 2022). If that is correct, that moots his request for habeas relief. *Diaz v. Kinkela*, 253 F.3d 241, 243–44 (6th Cir. 2001) (holding that a prisoner's release from custody mooted his habeas claim that he should not have to serve a portion of the time on his sentence because "there simply is no injury for which … [the court] may afford a remedy").

11

### C.   Evers's Motion for Summary Judgment

That leaves Evers's Motion for Summary Judgment. As explained above, the October 16, 2020, R&R recommended that the Court grant that Motion on qualified immunity grounds and dismiss the case. The Supplemental R&R came to the same conclusion, recommending that the Court grant the motion with or without consideration of Johnston's late-filed affidavit.

As noted, Johnston did not timely object to the Supplemental R&R either. But even absent a proper objection, the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See, e.g.*, *Jackson v. Drug Enf't Admin.*, No. 1:21-cv-402, 2022 WL 60312, at *1 (S.D. Ohio Jan. 6, 2022) (reviewing for clear error absent an objection to a Magistrate Judge's R&R); *Wilkins v. Mahlman*, No. 1:21-cv-312, 2022 WL 44689, at *1 (S.D. Ohio Jan. 5, 2022) (same).

The Court sees no clear error, indeed no error at all, in the Magistrate Judge's recommendation. As a reminder, a court should grant summary judgment when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And in undertaking that analysis, the Court construes all reasonable inferences in the nonmovant's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Relevant to Johnston's affidavit (to the extent that the Court were to consider it), "self-serving testimony [that] is blatantly and

12

demonstrably false" cannot create a genuine issue of material fact. *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020).

Evers is entitled to qualified immunity unless his conduct "violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). Johnston thus must show both that a constitutional violation occurred and that the violation "involved a clearly established constitutional right of which a reasonable person would have known." *Id.* (quoting *Sample v. Bailey*, 409 F.3d 689, 696 (6th Cir. 2005)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The October 16, 2020, R&R and the Supplemental R&R both conclude that Evers is entitled to qualified immunity. (Docs. 64, 80). Even without video of the incident, the October 16, 2020, R&R notes that Evers asserted that "only minimal force was used to break up a fist fight between two combatant inmates after [Johnston] ignored" Evers's commands. (Doc. 64, #292). Given that Johnston suffered no injuries and put so little before the Court to rebut Evers's statements, Johnston failed to create a genuine dispute regarding Evers' account. And under that account, Evers is entitled to summary judgment.

Now there is even more evidence that confirms that result. Evers has submitted a 16-minute, 30-second video showing the incident. (*See* Doc. 75, #365). To be sure, Evers had not previously submitted that video. But there was no reason to, as Johnston had not offered a competing account. And that video both (1) shows that

13

many of Johnston's allegations about the altercation are demonstrably false; and (2) provides support for Evers's account. *See Davis*, 951 F.3d at 750 ("[W]here self-serving testimony is blatantly and demonstrably false, it understandably may not create a genuine issue of material fact, thereby allowing a court to grant summary judgment.") (emphasis omitted) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). That seals the deal.

Evers did not commit a constitutional violation. He witnessed a conflict between inmates, moved to separate them, and used reasonable force to quell the situation only when it became necessary. Evers did shove Johnston when Johnston approached him, but it is undisputed that Johnston suffered no physical harm as a result. Johnston has alleged nothing further to show that Evers violated his constitutional rights. The Court thus **GRANTS** Evers's Amended Motion for Summary Judgment (Doc. 54).

## CONCLUSION

For the reasons above, the Court **ADOPTS** the October 16, 2020, R&R (Doc. 64) and the Supplemental R&R (Doc. 80) in full. The Court thus **DENIES WITHOUT PREJUDICE** Johnston's request for habeas relief (Doc. 73) and **DENIES WITHOUT PREJUDICE** Johnston's Motion/Appeal (Doc. 72). The Court also **GRANTS** Evers's Amended Motion for Summary Judgment (Doc. 54). The Court **DIRECTS** the Clerk to enter judgment and **TERMINATE** this case on the Court's docket.

**SO ORDERED.**

September 28, 2022
**DATE**

        **DOUGLAS R. COLE**
        **UNITED STATES DISTRICT JUDGE**

15